**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

CHARLES GAMBLE,

                         Petitioner,

                         v.

STEPHEN JOHNSON, *et al.*,

                         Respondents.

Civil Action No. 15-8358 (MAS)

**OPINION**

**SHIPP, District Judge**

        This matter comes before the Court on Petitioner's amended petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. (ECF No. 27.) Following an order to answer, Respondents filed a response to the amended petition. (ECF No. 29.) Petitioner did not file a reply. For the following reasons, the Court denies the amended petition and denies Petitioner a certificate of appealability.

## I.       BACKGROUND

        In its opinion affirming Petitioner's conviction and sentence on direct appeal, the Superior Court of New Jersey, Appellate Division, summarized the factual background of Petitioner's conviction as follows:

> [Petitioner] was convicted of conspiracy to commit the murder of Terry Jackson . . . ; murder . . . ; and possession of a weapon for an unlawful purpose[. Petitioner] was sentenced to life imprisonment with an eighty-five percent period of parole ineligibility. . . .
>
> . . . .

The State's theory of the case asserted that animosity existed between [Petitioner] and Jackson, and that [Petitioner] shot Jackson as a result.  That theory was advanced through the testimony of Jackson's cousin, Betty Ann Gadson[.]  She testified that during the afternoon of April 24 around 4:30 p.m., she was waiting for her daughter's school bus when a "boy" named Raphael approached her and asked whether she wanted to smoke.  She told him "yes," but before they could do so, [Petitioner], along with another individual, joined them and [Petitioner] said, "don't smoke with her, she's the enemy, don't smoke with her[.]"  Raphael told [Petitioner] to leave her alone, but [Petitioner] continued to "act like he was angry at [her], like if [she] did something to him[.]"  The argument escalated into a fight, with others holding [Petitioner] back.  At that point, [Petitioner] told her to "go get your cousin Terry" . . . "and then that's when [Petitioner] pulled up his shirt and he had a gun on him and the gun was silver."  [Petitioner] did not tell her why he wanted Terry but "started yelling, go get your cousin, this is for your cousin, you know, just go get Terry, go get Terry."  Gadson testified that she then ran upstairs and called the police and her cousin Terry.  She told police "there's this guy out here, he's got a gun, and he's, you know, bothering me[.]"  She told police the person was named Bundles, the name by which she knew [Petitioner].  Gadson told the jury that she believed [Petitioner] was angry with her because she was related to Terry and also because she had been present days earlier when Terry and his friends confronted [Petitioner] about something they thought [Petitioner] had said about Terry, an allegation that [Petitioner] denied during the confrontation.  Other than Gadson's testimony about the earlier incident involving [Petitioner] and Jackson, there was no other evidence before the jury that pointed to any motive [Petitioner] may have had to murder Jackson.  The defense theorized that Jackson's murder may have been drug-related since a bag of crack cocaine was found in his hand when police discovered his body.

During the morning of July 24, several hours before his confrontation with Gadson, [Petitioner] had been involved in a domestic dispute with his girlfriend, Jessica Torres[.]  [Petitioner] had pulled out a silver gun and pointed it at her.  She immediately left and went to the home of her mother.  When she reached her mother's home, [Petitioner] had already arrived and the argument continued.  [Petitioner] started hitting her, prompting her brother to call the police.  When they arrived, [Petitioner] had already gone outside.  Torres did not tell the police about the gun [Petitioner] had pointed at her.  When they subsequently spoke to [Petitioner] outside, he told them his name was Bundles and provided police with his cell phone number.  That same cell phone number was linked to a phone found by April Carroll . . . around 10:00 p.m. that

2

night while she was walking, not far from the area where the victim's body was later discovered. The next day, after learning that something had happened to Jackson, she took the phone to Jackson's cousin, Shana Creadle, who she knew because the phone was ringing "different people's names from the family so I just thought, you know, maybe it was hers, you know, his or whatever, somebody's, in that, you know, situation."

At about the same time that Carroll found the cell phone, [Petitioner] was at the apartment of a friend, William Askew[,] who was living with his aunt. [Petitioner] told Askew that he had been involved in a shooting. He explained to Askew that he had a nine millimeter gun and was able to fire two shots before the gun jammed, at which time he told his friend, Raphael Powell . . . , who was with him, to shoot the person at whom he had been shooting. [Petitioner] also told Askew that he had dropped his phone when he was running after the shooting and hoped that police would not find it.

[Petitioner] later ended up at the home of Tomia Fish . . . around 3:00 a.m. on the morning of August 25, where he slept on a loveseat. Around 10:00 a.m., a neighbor knocked on Fish's door and, upon entering, had a copy of a newspaper reporting Jackson's death. [Petitioner] attempted to convince Fish that he had been at her home since 8:00 p.m. the previous evening.

Two months later when co-defendant Isiah Thomas[,] who had been with [Petitioner] on the evening of Jackson's death, and Askew were all incarcerated at the Ocean County Jail, [Petitioner] and Thomas learned Askew had told police about the night they came to his apartment. They confronted Askew, accusing him of being a "snitch" and made threatening comments to him. In addition, a year later, in October 2007, [Petitioner] told his cellmate, Sean Lewis[,] that he had killed Jackson, but when Lewis later told him Thomas claimed he had killed Jackson, [Petitioner] became angry that Thomas was taking credit for his "stain," meaning his kill.

Notwithstanding this evidence, . . . three references to [Petitioner]'s affiliation with the Bloods [appear in the trial record], beginning with Gadson when she called police after her confrontation with [Petitioner] during the afternoon of August 24 and told them that [Petitioner] was a member of the Bloods. The court overruled defense counsel's objection to this testimony, finding that it was relevant. The court offered to give a curative instruction, which defense counsel declined. Officer William Allen [also] testified, without objection, that on the evening of the murder, he responded to a call that someone was being chased by members of the Bloods. [Finally,] Lewis testified, over objection from defense counsel, that

> while he and [Petitioner] were cellmates, [Petitioner] attempted to recruit him for the Bloods and that [Petitioner] explained to him how the organization worked, including that eventually Lewis would probably have to kill someone, at which point [Petitioner] told Lewis that he had killed Jackson.  In overruling defense counsel's objection to this testimony, the court reasoned that "while [the conversation] may give reference to a prior bad act or inference of gang-related activity, I believe that it's not [Rule 404(b)] type of evidence that's objectionable because it goes to plan, scheme[,] as well as it really is res gestae of the conversation in the setting."  The court did not provide a limiting instruction.

*State v. Gamble*, 2010 WL 3516934, at *1-3 (App. Div. Sept. 3, 2010), *certif. denied*, 205 N.J. 81 (2011).

## II.   <u>LEGAL STANDARD</u>

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court.  *See Eley v. Erickson*, 712 F.3d 837, 846-47 (3d Cir. 2013).  Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts.  *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta[,]" of the opinions of the United States Supreme Court.  *See Woods v. Donald*, 575 U.S. 312, 316 (2015).  "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.*  Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

## III.    DISCUSSION

### A.    Petitioner's Prior Bad Acts/Other Crimes Claims

In his first series of claims, Petitioner contends that the admission of references to his membership in the Bloods gang into evidence without corrective measures at trial deprived Petitioner of a fair trial.  The Appellate Division rejected this claim on direct appeal, finding that Lewis's testimony regarding Petitioner telling him about his Bloods membership was highly relevant and probative of Petitioner's guilt insomuch as it was tied to his admission of having killed Jackson, and that while the other two references were improper under state evidentiary rules, they were ultimately harmless in light of the strong evidence of Petitioner's guilt presented at trial. *See Gamble*, 2010 WL 3516934, at *3-4.

Because "[t]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules," *see Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983), claims challenging the admissibility of testimony or other evidence are normally considered questions of state law which are not cognizable in habeas corpus. *See Keller*

*v. Larkins*, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence"); *see also Estelle v. McGuire*, 502 U.S. 62, 67-70 (1991); *Wilson v. Vaughn*, 533 F.3d 208, 213-14 (3d Cir. 2008), *cert. denied*, 556 U.S. 1170 (2009). A habeas petitioner may therefore raise a habeas claim based on a state law evidentiary decision only where he can show that the admission of the evidence in question denied him Due Process under the Fourteenth Amendment by depriving him of the "fundamental elements of fairness in [his] criminal trial." *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992) (Thomas, J. dissenting)). "The Supreme Court has 'defined the category of infractions that violate 'fundamental fairness' very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 443 (1992)). "In order to satisfy due process, [Petitioner's] trial must have been fair; it need not have been perfect." *Id.* (citing *United States v. Hasting*, 461 U.S. 499, 508 (1983)). Thus, a Due Process violation will only occur in the context of a state court evidentiary ruling when that ruling was "so arbitrary or prejudicial that it rendered the trial fundamentally unfair." *Scott v. Bartkowski*, No. 11-3365, 2013 WL 4537651, at *9 (D.N.J. Aug. 27, 2013) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994)).

The Supreme Court has never held that evidence of alleged prior bad acts—even prior crimes—must be excluded from criminal trials or that a curative instruction or other restriction is per se required for a criminal conviction to survive constitutional scrutiny. *See generally Estelle*, 502 U.S. 62; *Greer v. Miller*, 483 U.S. 756 (1987); *Spencer v. Texas*, 385 U.S. 554 (1967); *see also Minett v. Hendricks*, 135 F. App'x 547, 553 (2005). As with most state court evidentiary decisions, the admission of such evidence will only warrant habeas relief where the admission of

the evidence was so unduly prejudicial that it rendered the petitioner's trial fundamentally unfair. *Glenn*, 743 F.3d at 407; *Minett*, 135 F. App'x at 553.

Having reviewed the record of this matter, it is clear that the admission of the three references to the Bloods street gang during trial did not deny Petitioner a fundamentally fair trial. The reference made during Lewis's testimony was directly relevant to the central issue at trial insomuch as Petitioner admitted to killing Jackson as part of his discussion of admitting Lewis into the Bloods and any undue prejudice from a gang association was certainly outweighed by the relevance of that admission. The two remaining references were isolated and of limited prejudice, and did not have the capacity to produce an unjust result at trial in light of the strong evidence of Petitioner's guilt produced at trial, including the location where his phone was found, Petitioner's own admissions of guilt, Petitioner's interactions with the victim's family, and clear animosity and threats towards Jackson, notwithstanding the lack of a strong limiting instruction. As the admission of the evidence did not deprive Petitioner of a fundamentally fair trial, Petitioner's gang testimony related claim provides no basis for habeas relief.

In a related claim, Petitioner argues that the state courts improperly admitted testimony from a jail classification officer regarding how he came to be housed with Lewis. Specifically, Petitioner contends that this amounts to improper other crimes evidence because the housing officer mentioned that one of the number of factors considered in placement was criminal history, without any comment as to any actual history of Petitioner. The Appellate Division found this comment ultimately harmless as the officer did not express any criminal history on Petitioner's part, and in any event stated that classification was based on a number of factors including the charged crime and prior jail history. The Appellate Division also noted the strong limiting instruction given regarding this testimony. All considered, the classification testimony was not capable of rendering Petitioner's trial fundamentally unfair. It did not deprive Petitioner of Due

Process in light of the limiting instruction, the listing of the number of factors leading to jail placements, and the lack of any testimony directly suggesting any past bad acts or crimes on Petitioner's part.  As the testimony did not render Petitioner's trial unfair, it serves as no basis for habeas relief.

### B.      Petitioner's Jury Instruction Claim

In his next claim, Petitioner contends that he was denied a fair trial when the trial court's jury instruction as to Petitioner's election not to testify informed the jury that Petitioner was entitled to a presumption of innocence "even if he chooses not to testify."  (ECF No. 27 at 7.) Essentially, Petitioner contends that the word "even" in the instruction provides a negative connotation to the decision not to testify on his own behalf.  The Appellate Division rejected this argument, finding that the instruction tracked the model instruction in place at the time of the charge.  Although the model instruction subsequently replaced "even if" with "whether or not," the instruction in question clearly indicated to the jury that a criminal defendant was free to choose not to testify on his own behalf, and that the jury was to draw no negative conclusion from the decision not to testify.  *Gamble*, 2010 WL 3516934, at *4.

That a jury "instruction was allegedly incorrect under state law is not a basis for habeas relief." *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir.) (quoting *Estelle*, 502 U.S. at 71-72), *cert. denied*, 534 U.S. 919 (2001). A habeas petitioner will not be entitled to relief based on an allegation of improper jury instructions at trial unless "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). The Supreme Court has held that the "category of infractions that violate fundamental fairness" is very narrow, *Estelle*, 502 U.S. at 72-73, and challenged jury instructions must be considered in the context of the entire charge and the trial as a whole, with habeas relief available only in cases in which the challenged charge was so erroneous that it resulted in a

violation of Due Process in light of all the relevant facts. *Duncan*, 256 F.3d at 203. Even where the instruction in question was "undesirable, erroneous, or even universally condemned," habeas relief will not be warranted unless the charge rendered the trial fundamentally unfair. *Id.*

The charge Petitioner challenges here was one his own counsel requested, which clearly instructed the jury that it was to draw no negative conclusions from Petitioner's decision not to testify, and that he remained entitled to the presumption of innocence notwithstanding that decision. Although the "even" language may not be ideal—and it was certainly wise of the state courts to change the model instruction to more neutral language—it is clear that the charge as given did not render Petitioner's trial fundamentally unfair and did not deprive him of Due Process. The charge made it abundantly clear that the jury should not negatively view the decision not to testify and that Petitioner remained entitled to a presumption of innocence, and the charge cast no aspersions on the decision not to testify. The charge did not deprive Petitioner of Due Process, and thus serves as no basis for habeas relief.

C.     **Petitioner's Wallet Related Claim**

In his next claim, Petitioner asserts that the trial court erred in admitting the victim's wallet into evidence and potentially into the jury room, as the wallet contained pictures of the victim's children. The Appellate Division rejected this claim as the wallet was admitted for a valid basis— to show that the murder had not been part of a robbery as the wallet and the money it contained had not been taken—and there was no reference to the pictures contained in the wallet in any testimony or argument, and the permitting of the photos into evidence as part of the wallet was thus harmless at worst. As the wallet itself was admissible under state evidentiary rules, and the presence of the pictures, without comment or argument referencing them, did not have the capacity to render Petitioner's trial fundamentally fair, the admission of the wallet with the pictures provides no basis for habeas relief. *Glenn*, 743 F.3d at 407.

**D.      Petitioner's Sentencing Claim**

Petitioner next argues that his life sentence is manifestly excessive.  Because federal habeas jurisdiction is only available to remedy violations of the United States Constitution or federal law, habeas relief is ordinarily not available for alleged errors of state law.  *See Estelle*, 502 U.S. at 67-69; *Lewis v. Jeffers*, 490 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Riley v. Taylor*, 277 F.3d 261, 310 n.8 (3d Cir. 2001).  A federal habeas court therefore has no authority to re-examine state court determinations on issues of state law.  *See Estelle*, 502 U.S. at 67-69.  Because "sentencing is a matter of state criminal procedure and [generally] does not involve such a denial of fundamental fairness as to fall within the purview of federal habeas corpus," alleged sentencing errors by a state court will not warrant habeas relief unless the sentence imposed was outside of the range authorized by the crime in question or was otherwise beyond the sentencing judge's authority to give.  *See, e.g.*, *Sutton v. Blackwell*, 327 F. Supp. 2d 477, 486 (D.N.J. 2004) (quoting *Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987)).  Because Petitioner's sentence is well within the statutory maximum for the murder for which he was convicted, as the Appellate Division found the sentence proper under state law, *see Gamble*, 2010 WL 3516934, at *5, and as Petitioner has presented no other basis for finding his sentence to be in violation of the constitution, Petitioner's sentencing claim provides no valid basis for habeas relief and is denied.

**E.      Petitioner's Ineffective Assistance of Counsel Claims**

In his remaining claims, Petitioner contends that he received ineffective assistance of counsel.  The standard applicable to claims of ineffective assistance of counsel is well established:

> Claims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984).  To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient.  This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also*

10

*United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

In his first claim, Petitioner contends that trial counsel failed to fully investigate and acquire expert testimony to exploit photographs of footprints taken at the scene of the shooting. While a detective did testify at trial that footprints were found, and pictures were taken, no casts or study of the prints were made, nor were they ever compared to Petitioner's boots or other shoes. During Petitioner's PCR appeal, the Appellate Division rejected this claim, finding that Petitioner had failed to show how a footprint expert could have exonerated him or done any comparisons with the footprint photographs in the absence of a cast, and had thus failed to show that he was in any way prejudiced by counsel's alleged failure in this area. Petitioner's habeas claim fares no better—he provides no proposed expert testimony, has identified no expert who could or would be inclined to perform the analysis he suggests, and has failed in any way to show that the footprint photographs could have in exonerated him. In light of the strong evidence of Petitioner's guilt produced at trial, Petitioner has failed to show that he was prejudiced by counsel's failure to further investigate or secure a footprint expert at trial. *See, e.g.*, *Duncan*, 256 F.3d at 201-02 (showing of prejudice as to failure to investigate requires showing of proposed beneficial testimony which would have resulted from further investigation). Petitioner's footprint investigation related claims thus fail to set forth a basis for relief.

Petitioner next raises several additional claims of ineffective assistance of trial counsel, which were first raised during Petitioner's second PCR proceeding: (1) trial counsel did not adequately involve Petitioner in trial strategy and developments; (2) trial counsel did not adequately update Petitioner as to plea negotiations and did not adequately explain the consequences of a conviction leading Petitioner to decide to go to trial; and (3) trial counsel failed to subpoena and call as a witness Andre Askew, who Petitioner believes could have undermined the testimony of William Askew at trial. The Appellate Division found each of these claims to be barred under state procedural rules as they could have been, but were not, raised in an earlier

proceeding—Petitioner's first PCR petition. *See State v. Gamble*, 2022 WL 619545, at *2-4 (App. Div. Mar. 3), *cert. denied*, 252 N.J. 196 (2022).   Respondents now contend that these claims are procedurally defaulted in light of the state court's bar. *See, e.g.*, *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (claims which are barred by an adequate state law ground, including those which have not been properly exhausted but are clearly subject to a state procedural bar, are considered procedurally defaulted in a habeas proceeding).

Pursuant to the procedural default doctrine, "federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds." *Dretke v. Haley*, 541 U.S. 386, 392 (2004).   Habeas courts may therefore not review the wisdom of state law procedural hurdles, and may in turn generally "not address the merits of a procedurally-defaulted claim if the state court opinion includes a plain statement indicating that the judgment rests on a state law ground that is both 'independent' of the merits of the federal claim and an 'adequate' support for the court's decision." *Campbell v. Burris*, 515 F.3d 172, 176 (3d Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).   A habeas petitioner may only obtain relief on a claim that has been procedurally barred by either showing cause and actual prejudice for the default, or that he is actually innocent of the crime for which he was convicted. *Dretke*, 541 U.S. at 393.

Here, Petitioner's claims were barred by the state courts for failure to raise them in his first PCR petition.   The bar on raising claims in a second proceeding that could have been raised in previous petitions is an adequate and independent bar, and these ineffective assistance of counsel claims are therefore procedurally defaulted.   This Court is barred from providing relief on these claims unless and until Petitioner shows a basis for evading the bar—either cause and actual prejudice, or that he is actually innocent of the charged crime.   Petitioner has not attempted to make either showing, and this Court perceives no basis for evading his procedural default in this

matter.  Petitioner could have raised these claims in his first PCR petition, but did not do so.  He has not shown that some external factor prevented him from raising them, nor has he shown in any way that he was innocent of the murder involved in this matter.  Petitioner has thus failed to show any basis to overcome his procedural default, and these ineffective assistance claims are barred and provide no basis for habeas relief.[1]

In his final claim, Petitioner contends that his first PCR counsel was ineffective in failing to "investigate a statement of co-defendant Issiah Thomas clearing Petitioner's name in the murder" drafted years after Petitioner's conviction.  The ineffectiveness of PCR counsel, however, is not a valid basis for habeas relief.  *See* 28 U.S.C. § 2254(i) (the "ineffectiveness or incompetence of counsel during . . . collateral post-conviction proceedings shall not be a ground for relief" in a habeas proceeding).  Thus, even putting aside the state's contention that this claim is not properly exhausted, it must be rejected on the merits as it could not in principle provide relief to Petitioner by law.  *Id.*; *see also* 28 U.S.C. § 2254(b)(2) (unexhausted claims may be rejected on the merits notwithstanding failure to exhaust).

---

[1] Although this Court need not decide these claims on the merits, the Court notes that they are in any event without merit even were they not barred.  The record is clear that Petitioner was made well aware that he faced a life sentence if convicted at trial and the PCR court found his claims to the contrary incredible, and Petitioner has not even attempted to show that he would have actually pled guilty to any offered deal had he been "better informed."  Petitioner presents this Court with no trial strategy decision on which he should have had a say, nor has he shown that any of his suggestions—which chiefly appear to have concerned the footprint issue—would have had any effect upon the outcome at trial had counsel listened to him.  Finally, as to Andrew Askew, the certification provided during PCR proceedings provided no more than Andrew's belief that his brother had provided false information, and at best amounted to additional impeachment evidence towards one state witness.  Such impeachment evidence, even if offered at trial, would not have undercut any of the significant remaining evidence of Petitioner's guilt, including his confession to Lewis, his phone being found near the scene, and his belligerence in the days leading up to the shooting.  Thus, even were these claims not barred, Petitioner has failed to show prejudice, and they would serve as no basis for habeas relief.

IV.    **CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). "[A petitioner] satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude [that] the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner's habeas claims are without merit for the reasons set forth above, he has failed to make a substantial showing of a denial of a constitutional right, and his petition is not adequate to receive encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability.

V.    **CONCLUSION**

In conclusion, Petitioner's amended habeas petition (ECF No. 27) is **DENIED**, and Petitioner is **DENIED** a certificate of appealability. An appropriate order follows.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE